UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAWS ABOARD, LLC,

                Plaintiff,

v.                              Case No. 8:11-cv-1978-T-33EAJ

PIETRO DIDONATO, ET AL.,

                Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Pietro DiDonato's Motion to Dismiss or in the Alternative to Transfer (Doc. # 10), filed on December 7, 2011. Plaintiff Paws Aboard, LLC filed a response in opposition (Doc. # 11) on December 21, 2011, and DiDonato filed a reply (Doc. # 14) with leave of Court on January 5, 2012. For the reasons that follow, the Court grants the Motion and the matter is dismissed.

**I. Background**

Paws Aboard is in the business of selling pet products. In particular, Paws Aboard is the originator of and distributes, markets and sells a non-tangling dual dog leash known as the "Freedom Leash." (Doc. # 9 at ¶ 6). DiDonato holds a patent for a non-tangling dual dog leash, which Paws Aboard alleges is invalid. (Id. at ¶¶ 7-8). Furthermore, Paws

Aboard asserts that its Freedom Leash does not infringe on any patent held by DiDonato. (Id. at ¶ 10).

In May 2011, DiDonato, through his attorney, sent letters to the president and CEO of Hammacher Schlemmer & Company, and the president of SkyMall, Inc., both of which are independent dealers of the Freedom Leash. (Id. at ¶ 9). The letters alleged that the Freedom Leash infringed on DiDonato's patent and offered the dealers the option of purchasing a license or suspending sales of the Freedom Leash. As a result, the two dealers have ceased distribution, sales and marketing of the Freedom Leash. (Id. at ¶ 10). Furthermore, Paws Aboard alleges that DiDonato posted a comment on the web site [www.coolest-gadgets.com](www.coolest-gadgets.com), stating that "the tangle free dual leash has no patent and is infringing on my existing patent." (Id. at ¶¶ 13-15). Paws Aboard asserts that it has suffered harm as a result of DiDonato's actions.

Paws Aboard filed suit in this Court on August 31, 2011 (Doc. # 1), and DiDonato filed a motion to dismiss on November 10, 2011 (Doc. # 7). On November 23, 2011, Paws Aboard filed an Amended Complaint (Doc. # 9) as a matter of course. The motion to dismiss was thus denied as moot. (Doc. # 18).

The Amended Complaint asserts claims against DiDonato and Does 1-20 for defamation with regard to the Internet posting

(Count 1), defamation with regard to the letters (Count 2) and intentional interference with prospective economic advantage (Count 4). Paws Aboard further seeks a declaratory judgment that the Freedom Leash does not infringe on any patent held by DiDonato, and that DiDonato's patents Numbers 7,207,296 and 7,455,034 are invalid (Count 3). Paws Aboard seeks compensatory and punitive damages, attorney's fees and costs.

DiDonato's renewed Motion to Dismiss (Doc. # 10) is now before this Court. DiDonato moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction over DiDonato; Rule 12(b)(1), for lack of subject matter jurisdiction; Rule 12(b)(3), for improper venue; and Rule 12(b)(6) for failure to state a claim upon which relief can be granted as to Counts 1, 2 and 4. In the alternative, DiDonato moves to transfer any viable claims to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a).

For reasons that will become evident in the following discussion, the Court will focus its analysis on the question of personal jurisdiction over DiDonato.

## II. Legal Standard

A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction. Posner

v. Essex Ins. Co., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant. Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1328 (Fed. Cir. 2008).

As a preliminary matter, this Court must undergo a choice of law analysis. In cases "intimately involved with the substance of the patent laws," the Court must apply the law of the Federal Circuit to the determination of personal jurisdiction. Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995). Such cases include claims in which "the question of infringement is a critical factor in determining liability under the non-patent claims." Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1362 (Fed. Cir. 2006).

Here, Paws Aboard claims that DiDonato's letters and Internet posting falsely state that the Freedom Leash infringes upon DiDonato's patent rights. Paws Aboard further seeks a declaratory judgment that the Freedom Leash does not infringe on DiDonato's patents and that two such patents are invalid. Because the question of infringement is intrinsic to adjudication of these claims, the Court finds that the law of the Federal Circuit applies to the jurisdictional analysis in

this case. See Avocent Huntsville, 552 F.3d at 1328 (applying Federal Circuit law to claims for declaratory judgment of non-infringement and intentional interference with business relationship related to a patent); Breckenridge Pharm., 444 F.3d at 1362 (same).

The determination of whether this Court has personal jurisdiction over a defendant is governed by a two-part analysis. First, the Court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute. Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)). For this prong, the Federal Circuit "defer[s] to the interpretation of a state's long-arm statute given by that state's highest court." 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998).

Second, once it has determined that the state's long-arm statute has been satisfied, the Court must determine whether the plaintiff's assertion of jurisdiction comports with the Constitution's Due Process requirements. Avocent Huntsville, 552 F.3d at 1329. "[W]hen analyzing personal jurisdiction for purposes of compliance with federal due process, Federal

5

Circuit law, rather than regional circuit law, applies." <u>3D Sys.</u>, 160 F.3d at 1377.

### III. **Analysis**

The plaintiff has the initial burden of establishing a prima facie case of personal jurisdiction. "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." <u>Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.</u>, 288 F.3d 1264, 1269 (11th Cir. 2002) (internal quotations and citations omitted). The pleadings and evidence are construed in the light most favorable to the plaintiff. <u>Silent Drive, Inc. v. Strong Indus., Inc.</u>, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

After the plaintiff makes a prima facie case for the exercise of personal jurisdiction,

> the burden shifts to the defendant to make a prima facie showing of the inapplicability of the [long-arm] statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

<u>Future Tech. Today</u>, 218 F.3d at 1249 (quoting <u>Prentice v. Prentice Colour, Inc.</u>, 779 F. Supp. 578, 583 (M.D. Fla. 1991)). DiDonato attached to his Motion various exhibits, including his Declaration stating that his contacts with Florida "are not even minimal." (Doc. # 10-1 at 23). In its

response to the Motion, Paws Aboard attached the Declaration of Paws Aboard Managing Member Amber McCrocklin stating, among other things, that at least two non-parties read DiDonato's posting on the "Coolest Gadgets" web site. (Doc. # 11-1).

**A.   Florida's Long-Arm Statute**

Paws Aboard asserts specific personal jurisdiction over DiDonato pursuant to § 48.193(1)(b) and/or general personal jurisdiction pursuant to § 48.193(2) of Florida's long-arm statute, which provide as follows:

> (1)   Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection, thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> . . . .
>       (b) Committing a tortious act within this state.
> . . . .
> (2)   A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193. Paws Aboard contends that the sending of the letters to the dealers constituted an intentional tort, which satisfies the requirements of Fla. Stat. § 48.193(1)(b) because it caused harm within Florida. See Enviracarbon, Inc.

7

v. Couch, No. 6:10-cv-1886-Orl-35DAB, 2011 WL 4501058 (M.D. Fla. June 20, 2011) (recognizing a split in authority on this issue but acknowledging the Eleventh Circuit's holdings that a defendant's presence in Florida is not required if the tort causes an injury in Florida).

The letters are not so easily categorized as tortious, however. The Federal Circuit has held that letters from a patentee informing an accused infringer's customers of the alleged infringement constitutes protected conduct under federal patent law. Breckenridge Pharm., 444 F.3d at 1361; see also Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1377 (Fed. Cir. 2004) ("The federal patent laws preempt state laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation."). Paws Aboard contends that the letters were sent in bad faith and were offers to sell licenses rather than "cease and desist" letters; however, the Court is not convinced that they satisfy § 48.193(1)(b).

DiDonato's posting on the "Coolest Gadgets" web site is another matter. The Florida Supreme Court has concluded that the posting of allegedly defamatory material on a web site accessible and accessed in Florida, about a company whose

principal place of business is in Florida, constitutes a tortious act in Florida, thus satisfying § 48.193(1)(b). <u>Internet Solutions Corp. v. Marshall</u>, 611 F.3d 1368, 1370 (11th Cir. 2010). McCrocklin states that at least two non-parties read DiDonato's posting on the "Coolest Gadgets" web site, although she does not allege whether these parties are in Florida.

The grounds for Paws Aboard's assertion of general personal jurisdiction over DiDonato pursuant to §§ 48.193(2) appear to lie in DiDonato's engagement of a process server in Florida to serve a summons and complaint on Paws Aboard with regard to a separate suit for patent infringement. Paws Aboard cites no case law in support of this assertion of general personal jurisdiction, and DiDonato does not appear to have conducted any other activity within the state.

Because the Due Process analysis, discussed below, is dispositive of the Motion to Dismiss, the Court finds it unnecessary to delve too deeply into the provisions of Florida's long-arm statute. The Court will presume that the long-arm statute has been satisfied.

**B.    Due Process**

Assuming that DiDonato's conduct falls within Florida's long-arm statute, the assertion of personal jurisdiction is

9

not proper unless it comports with the requirements of Due Process. Due Process requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1940). The Federal Circuit has established a three-prong test for determining whether such minimum contacts exist. The Court must determine whether: "(1) the defendant purposefully directed [his] activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." Breckenridge Pharm., 444 F.3d at 1363 (citing Akro, 45 F.3d at 1545-46).

DiDonato's alleged activities relating to Paws Aboard's claims include the sending of letters, through his attorney, to the president and CEO of Hammacher Schlemmer & Company, and the president of SkyMall, Inc. Paws Aboard contends that the letters "were NOT cease and desist letters; they did not contain the phrase 'cease and desist' anywhere therein." (Doc. # 11 at 5). The Court has examined the letters, however, and determines that their purpose was to inform the dealers of a potential patent infringement suit and offer the dealers the option to purchase a license or cease selling the Freedom

10

Leash. They cannot be characterized as anything other than cease-and-desist letters.

The Federal Circuit has consistently held that "a patent owner may, without more, send cease and desist letters to a suspected infringer, or its customers, without being subjected to personal jurisdiction in the suspected infringer's home state." Breckenridge Pharm., 444 F.3d at 1362. This determination is based upon "policy considerations unique to the patent context." Silent Drive, 326 F.3d at 1206. "[P]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-1361 (Fed. Cir. 1998).

The fact that DiDonato's letters also sought to negotiate license agreements is of no moment. The Federal Circuit has held that the exercise of personal jurisdiction would be unconstitutional when "[a]ll of the [defendant's] contacts were for the purpose of warning against infringement or negotiating license agreements, and he lacked a binding obligation to the forum." Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1356 (Fed. Cir. 2002); see also Red Wing Shoe, 148 F.3d at 1361 (Fed. Cir. 1998) ("[A]n offer for a license

11

within a cease-and-desist letter does not somehow convert that letter into something more than it was already.").

Of course, Paws Aboard also claims defamation based upon DiDonato's alleged Internet posting. In cases involving intentional torts, minimum contacts are determined using the "effects test" established in Calder v. Jones, 465 U.S. 783 (1984). In Calder, the Supreme Court found that personal jurisdiction may be "proper because of [the defendant's] intentional conduct in [another state] calculated to cause injury to [the plaintiff] in [the forum state]." Id. at 791.

However, the Court must "focus[] on the relationship among the defendant, the forum, and the litigation." Id. at 788 (internal quotations and citation omitted). The allegedly libelous article at issue in Calder was drawn from sources in the forum state, published in the forum state and harmed a resident of the forum state. Thus, the forum state was "the focal point both of the story and of the harm suffered." Id. at 789. Although DiDonato's alleged Internet posting may have harmed Paws Aboard in Florida, the other factors are not supported by the evidence.

The fact that a web site might be accessible in the state does not necessarily mean that a defendant's activities were directed toward the state. See, e.g., Instabook Corp. v.

12

Instantpublisher.com, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006) (finding the defendant's operation of an interactive web site accessible in Florida insufficient to confer personal jurisdiction in a patent case). Merely posting comments on a foreign web site, as alleged here, is a weak link to the forum even if the posting might have been accessed here.

Upon due consideration, the Court determines that its exercise of personal jurisdiction over DiDonato does not comport with Due Process requirements. Because this Court finds that it does not have personal jurisdiction over DiDonato, it is not necessary to consider other grounds for dismissal asserted in the Motion. This case is dismissed for lack of personal jurisdiction.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Pietro DiDonato's Motion to Dismiss or in the Alternative to Transfer (Doc. # 10) is **GRANTED**. This matter is dismissed. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 13th day of April, 2012.

_/s/ Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record